IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEPTUN LIGHT, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17-CV-8343 |
| v. ) | |
| ) | Hon. Amy J. St. Eve |
| CITY OF CHICAGO; CHICAGO ) | |
| INFRASTRUCTURE TRUST; and ) | |
| AMERESCO, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants City of Chicago (the "City"), Chicago Infrastructure Trust ("CIT"), and Ameresco, Inc. (collectively, "Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Neptun Light, Inc.'s Complaint alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (R. 18.) For the following reasons, the Court grants Defendants' motion.

## BACKGROUND

This case concerns streetlights, and how the City went about procuring subcontractors to supply new and energy-efficient ones. The Complaint alleges that in November 2016 the City prepared a revamp of the City's lights with "smart lighting." To get the process underway, the City issued the Chicago Smart Lighting Project Request for Proposals ("RFP") to various contractors. (Compl. ¶ 22.) The City did so "in coordination" with CIT (*id.*), which is a nonprofit organization that assists the City "in providing alternative financing and project delivery options for transformative infrastructure projects" (*id.* ¶ 16). With their RFP, the City

and CIT sought to "select a single Proposer that delivers the best value." (*Id.* ¶ 24.) The RFP therefore requested "competitive detailed proposals," or bids, and the City and CIT would consider only proposals that satisfied the RFP's stated criteria. (*Id.* ¶¶ 23–25.)

The RFP required that bids must include new "LED Luminaires," a type of efficient electric-lighting unit, and that those luminaires meet certain specifications for installation in 270,000 fixtures. (*Id.* ¶ 28.) These RFP specifications—including wattage, range, and weight requirements—were specific to various different "lighting contexts," such as alley, residential, or arterial streets. (*Id.* ¶ 30.) The RFP also attached Form 4, which contractors had to complete by filling in data for their luminaires. (*Id.* ¶ 32.) Contractors further had to submit physical samples with their bids under the RFP. (*Id.* ¶ 33.)

The RFP contemplated that the City and CIT could conduct a demonstration of the submitted luminaires, and if they did, they would "utilize the relevant samples submitted by each Proposer." (*Id.* ¶¶ 34–35.) A comprehensive demonstration, however, was to occur only after the deadline to submit bids. (*Id.* ¶ 37.) The RFP stated that its goal was "to create a fair and uniform basis for the evaluation of the Proposals" and that the City would award the contract to the "Proposer whose Proposal conforms to the requirements of the RFP" and after considering the criteria it would "determine which proposal represents the 'best value.'" (*Id.* ¶ 36.) The RFP initially called for bids by December 14, 2016, but through a later addendum dated December 9, 2016, the City and CIT moved the deadline to January 9, 2017. (*Id.* ¶ 39.)

The Complaint alleges that Defendants ran afoul of the RFP in an effort to steer the luminaire subcontracting deal to General Electric ("GE") Lighting and away from Neptun and other competitors. According to the Complaint, this effort became evident in December 2016. That month, the City and CIT performed a neighborhood demonstration, but rather than use

luminaires supplied by "each" subcontractor, as the RFP contemplated, they used only GE Lighting's luminaires. (*Id.* ¶¶ 40–48.) The next month, on the deadline of January 9, 2017, the City and CIT received six proposals from contractors, including ones from Commonwealth Edison ("ComEd"), Aldridge Electric, Inc., Itron, Inc., and Ameresco. ComEd's proposal listed GE Lighting as the luminaire manufacturer, but explained that GE Lighting's luminaires could not meet each specification for all lighting contexts. (*Id.* ¶¶ 56, 57–58.) GE Lighting's luminaires also had not been independently tested by a recognized laboratory, as the RFP required. (*Id.* ¶¶ 57–61.) Similarly, Aldridge's bid listed GE Lighting, and Aldridge too conceded that GE Lighting's luminaires did not meet specifications. (*Id.* ¶¶ 62–64.)

Itron, meanwhile, listed Neptun as its luminaire subcontractor. Neptun, unlike GE Lighting, provided the required data and samples. (*Id.* ¶ 51.) Ameresco listed yet another luminaire manufacturer, but it noted that it could work with another "major manufacturer" already "aligned with another contractor" should "the CIT, City, and Parks have an interest in utilizing their products"—a not-so-subtle hint that Ameresco could secure GE Lighting's luminaires, according to the Complaint. (*Id.* ¶ 54.)

The City and CIT ultimately selected Ameresco as the project's contractor. No comprehensive demonstration of Ameresco's listed luminaires took place, however, as the RFP required. (*Id.* ¶ 66.) Instead, in February 2017, Ameresco notified Neptun that it was fielding additional luminaire sub-bids based on revised specifications. (*Id.* ¶ 68.) The City and CIT made many of those revisions to account for GE Lighting's shortcomings, according to the Complaint. Indeed, one of the revisions obviated the need to submit physical samples, which GE Lighting had failed to do in the first instance. (*Id.* ¶¶ 69, 72–73.) After receiving Ameresco's notice about the revised specifications, Neptun again had its luminaires tested independently, and

3

it submitted documentation with its "best proposal," providing "all information the City asked for." (*Id.* ¶¶ 72, 70.) In March 2017, Ameresco informed Neptun that it was not selected for any lighting context. GE Lighting was selected for five. (*Id.* ¶¶ 74–75.)

The Complaint goes on to allege in some detail how Neptun's luminaires were more efficient—by cost, lifespan, wattage—than GE Lighting's in each of the five lighting contexts GE Lighting was awarded. (*Id.* ¶¶ 78–106.) Looking for answers, Neptun sent a letter to Ameresco. The letter noted that Neptun, unlike GE Lighting, was a Chicagoland company, and that it "performed unequivocally" better than the companies selected. Ameresco never responded. (*Id.* ¶¶ 108–109.) Neptun then turned to the City, which did respond, and stated that it had suggested to Ameresco to "reach out to the broadest possible market by contacting each of the manufacturers of the six proposals, including Neptun." (*Id.* ¶ 113.) The City asserted further that Neptun did not provide the "best value" considering several factors, including "local manufacturing capability, large-scale experience, low dirt depreciation, and affordable lifecycle cost." (*Id.* ¶ 114.) According to the Complaint, those assertions were not only unsupported, they were simply wrong. The Complaint alleges, for example, that Neptun already makes luminaires in a Chicago suburb (*id.* ¶ 119), has manufactured over 400,000 luminaires (*id.* ¶ 125), includes better sealing properties in its luminaires than GE Lighting (*id.* ¶ 128), and offers less expensive, longer lasting luminaires than GE Lighting (*id.* ¶ 131).

Based on the City's empty justifications and in light of how the luminaire bidding panned out, the Complaint claims that Defendants entered into an unlawful agreement in violation of Section 1 of the Sherman Act. That agreement, it alleges, entailed "relaxing" the specification requirements and then holding a "purportedly open and free competition to select luminaire manufacturers as a pretext in order to include GE Lighting as a luminaire manufacturer—

notwithstanding the inferiority of GE Lighting's luminaires." (*Id.* ¶ 133.) The Complaint claims that not only did GE Lighting's selection contravene the RFP's stated goal to host a competitive bidding process and find the "best value," it also contravened Illinois law, which requires that "all purchase orders or contracts . . . involving amounts in excess of $10,000, made by or on behalf of [a] municipality, shall be let by free and open competitive bidding." (*Id.* ¶ 134 (quoting 65 ILC 5/8-10-3).) The Complaint alleges that Defendants' unlawful agreement to fix the bidding process for GE Lighting has harmed Neptun, which could have earned millions on the project, and Chicagoans, who now suffer less efficient and more expensive luminaires over their streets. (*Id.* ¶¶ 136–140.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *see also Hill v. Serv. Emp. Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) challenge, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Courts, of course, accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. *See, e.g.*, *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). After "excising the allegations not entitled to the presumption" of truth, courts "determine whether the remaining factual allegations plausibly suggest an entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## ANALYSIS

Antitrust law's precept is the protection of competition, not competitors. *See Woodman's Food Mkt., Inc. v. Clorox Co.*, 833 F.3d 743, 747 (7th Cir. 2016) (citing *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990)); *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 376 (7th Cir. 1986). It is not a catchall business tort designed to recompense the market's also-rans, even if their losses are the result of unfairness or deception. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 137 (1998); *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 558 (7th Cir. 1980).

The Complaint claims that Neptun lost the luminaire deals, and GE Lighting won those deals, because Defendants entered into an anticompetitive agreement to that end which purportedly violated Section 1 of the Sherman Act. "To state a claim for a Section 1 violation," a plaintiff "must plead facts plausibly suggesting: (1) a contract, combination, or conspiracy (*i.e.*, an agreement); (2) a resultant unreasonable restraint of trade in a relevant market; and (3) an accompanying injury." *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, No. 14-CV-02705, 2017 WL 6821094, at *3 (N.D. Ill. Dec. 13, 2017) (citing *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012)). "Regarding the second element, where, as here, the alleged anticompetitive conduct does not amount to a *per se* violation of the Sherman Act, courts assess the defendants' conduct under the Rule of Reason analysis." *United States ex rel. Blaum v. Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 923 (N.D. Ill. 2015) (citing *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007)); *see also, e.g., FTC v. In. Fed'n of Dentists,* 476 U.S. 447, 458 (1986) (the "test of legality [under the rule of reason] is whether the restraint imposed is such as merely regulates and perhaps thereby promotes

competition or whether it is such as may suppress or even destroy competition").[1]

Generally, the rule of reason "requires not only that the plaintiff allege and prove anticompetitive effects, but additionally, as with all antitrust claims, that the injury complained of be of a type that the antitrust laws were designed to guard against, and further that the antitrust violation be the direct cause of plaintiff's injury." *Havoco*, 626 F.2d at 556. "More specifically, a plaintiff must show that the defendants' conduct had an anticompetitive effect in a relevant market, and that the defendants have market power in that market." *Triad Isotopes*, 104 F. Supp. 3d at 923 (citing *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004)); *see also Slep-Tone Entm't Corp. v. Elwood Enters., Inc.*, 165 F. Supp. 3d 705, 713 (N.D. Ill. 2015) ("the rule of reason requires a showing that the alleged violator has 'market power' through an agreement that has produced adverse or anticompetitive effects within the relevant and specifically defined geographic market").

The Complaint in this case falls short of pleading a rule-of-reason claim. "The first requirement in every suit based on the Rule of Reason is market power." *Menasha*, 354 F.3d at 663; *see also, e.g.*, *Agnew*, 683 F.3d at 335 ("As a threshold matter, a plaintiff must show that the defendant has market power"); *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ("Substantial market power is an essential ingredient of every antitrust case under the Rule of Reason."); *Hardy v. City Optical Inc.*, 39 F.3d 765, 767 (7th Cir. 1994) (reiterating the Seventh Circuit's "rule that substantial market power is a threshold requirement of all rule of reason" cases). Nowhere does the Complaint even attempt to allege that the City, CIT, or Ameresco have such power. *See, e.g.*, *42nd Parallel N. v. E St. Denim Co.*, 286 F.3d 401, 405 (7th Cir. 2002) (affirming dismissal because the plaintiff "nowhere alleges that [the

---

[1] Neptun does not contest Defendants' assertion that this is a rule-of-reason case, as it is, given the allegedly vertical agreement. *Accord Leegin*, 551 U.S. at 886–88.

defendant] has such market power").

The Complaint likewise fails to allege a relevant market in which Defendants could have power. A plaintiff bears the "burden of describing a cognizable market under the Sherman Act." *Agnew*, 683 F.3d at 346; *accord Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 738 (7th Cir. 2004) (a plaintiff must define both a product and a geographic market to describe a cognizable market). The Complaint simply makes no effort to do so. *See House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11 C 07834, 2014 WL 64657, at *5 (N.D. Ill. Jan. 8, 2014) ("[f]ailure to identify a relevant market is a proper ground for dismissing a Sherman Act claim") (citing *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719–20 (6th Cir. 2003)). Neptun, however, argues that there is "no dispute" about what the relevant market is; the Complaint alleges that the City asked Ameresco to obtain bids from "the broadest possible market" of luminaire manufacturers and the relevant geographic is, "obviously," the City of Chicago. (R. 30 at 7–8.) Even assuming the Complaint "identif[ied] the market for luminaire manufacturers" in Chicago, that is not a cognizable antitrust market. For one, "luminaire manufacturers" are not a product or a service. Further, to the extent Neptun means to reference a market for luminaires, there are insufficient allegations (and no arguments) explaining how that is a market independent of other lighting products. *See, e.g.*, *Fed. Trade Comm'n v. Advocate Health Care Network*, 841 F.3d 460, 467 (7th Cir. 2016) ("Product markets usually include the product at issue and its substitutes, the other products that are reasonably interchangeable with it").

Setting those arguments aside, what the Complaint plainly takes issue with is not a lack of competition in a *market*, but a lack of competition with respect to one *customer* and one *contract*. But as the Seventh Circuit held in *Havoco*, "there must be some allegation of a

8

harmful effect on a more generalized market than" a single purchaser and a single contract.[2] 626 F.2d at 558–59; *accord City of New York v. Grp. Health Inc.*, 649 F.3d 151, 156 (2d Cir. 2011) ("A single purchaser's preferences . . . cannot define a market."); *Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F. Supp. 1503, 1512 (D. Colo. 1992), *aff'd,* 13 F.3d 366 (10th Cir. 1993) ("A relevant product market defined as one product sold to one customer does not make sense under the antitrust laws") (citing *Havoco*, 626 F.2d at 558).

Related to the Complaint's failure to allege a market is its failure to allege anticompetitive effects. In bringing a rule-of-reason claim, a "plaintiff must allege, not only an injury to himself, but an injury to the market as well." *Agnew*, 683 F.3d at 335 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). "[T]he absence of a sufficient allegation of anticompetitive effects in a Sherman Act complaint is fatal to the existence of the cause of action." *Havoco*, 626 F.2d at 554; *see also, e.g.*, *Agnew*, 683 F.3d at 335; *42nd Parallel*, 286 F.3d at 405.

Courts have long recognized that it is not anticompetitive for purchasers to "exercise [their] independent discretion as to parties with whom [they] will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919); *accord Expert Masonry, Inc. v. Boone Cnty., Ky.*, 440 F.3d 336, 347 (6th Cir. 2006) ("there is no economic rationale to restrict, as a violation of Section 1, a buyer's latitude in selecting the entity from whom it will purchase products or services"). "[T]he normal principle," therefore, is that "a buyer is entitled to choose among various sellers who offer competing products or services." *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532,

---

[2] In a footnote, Neptun notes that other courts have "rejected" the "single contract theory." Whatever that means, this Court follows the Seventh Circuit, and its holding that, absent allegations that "a single purchaser represented the entire market for a commodity," a market definition of one purchaser is "so narrow" as to "discourage [rather] than to protect competition, the ward of the antitrust laws." *Havoco*, 626 F.2d at 559 & n. 6.

539–40 (7th Cir. 1986) (parenthetically quoting *Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.*, 691 F.2d 241, 245 (6th Cir. 1982)). That principle applies even when the buyer's decision stemmed from unfair competition; "unfair competition, as such, does not violate the antitrust laws." *Sutliff, Inc. v. Donovan Cos., Inc.*, 727 F.2d 648, 655 (7th Cir. 1984) ("The legislators who passed the Sherman Act did not make ordinary business torts federal torts for which treble damages could be recovered"). Thus, although the "manipulat[ion]" of a "bidding process" by a purchaser may give rise to "a claim grounded in tort or contract," "the absence of any allegation of an anticompetitive effect prevents these claims from coming within the purview of the antitrust laws." *Car Carriers*, 745 F.2d at 1109–1110 (stating also, "[t]ortious activities in the form, for example, of unfair competition do not contravene the antitrust laws unless accompanied by the requisite anticompetitive effect"); *see also Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 62 (1st Cir. 2004) (even if Blue Cross "manipulated the bidding," "the antitrust laws are not meant to police bad management"); *Sitkin Smelting & Ref. Co. v. FMC Corp.*, 575 F.2d 440, 448 (3d Cir. 1978) (where losing bidder complained that purportedly open bid system was in fact fixed by the biddee for another bidder, stating the conduct was "clearly reprehensible" but "the Sherman Act may not be extended beyond its intended scope and used to police the morals of the marketplace").

Neptun's theory of harm runs headlong into that law. Neptun's clearest articulation of the alleged harm is that "[d]esiring and selecting a more expensive and poorly-performing product in advance of any bidding, and irrespective of the performance . . . is anticompetitive." (R. 30 at 4–5.) That theory has no recognition in the law (as evidenced by Neptun's lack of case-law support), and for good reason; otherwise, purchasers who make decisions that are anything from uninformed to thriftless would be subject to antitrust lawsuits and treble damages. *See,*

10

*e.g.*, *Expert Masonry*, 440 F.3d at 348 (in an unsuccessful bidder case, "certainly antitrust liability cannot be premised on improvident business decisions"). Elsewhere, Neptun describes Defendants' failure to "hold[ ] a true competition." (R. 30 at 12.) But even if that were true, "[t]he Sherman Act does not require competitive bidding"; it prohibits only "unreasonable restraints on competition," and Neptun has failed to allege any such restraints. *Nat'l Soc. of Prof'l Eng'rs v. United States*, 435 U.S. 679, 694 (1978); *see also, e.g.*, *JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose, Colo.*, 754 F.3d 824, 853–54 (10th Cir. 2014).

The Seventh Circuit was clear in *Havoco*: "a loss by the plaintiff of a single contract with a single purchaser is simply not equivalent to a deleterious effect on the market." 626 F.2d at 558. "Otherwise the mere fact that one party bid successfully against another party for a contract would be equivalent to an anticompetitive effect and would raise the specter of an antitrust action being used as a remedy for any tortious conduct during the course of the competition." *Id.* This is precisely the sort of claim Neptun advances.[3] *Accord Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1577 (7th Cir. 1991); *Triad Isotopes*, 104 F. Supp. 3d at 925; *see also, e.g.*, *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1370 (3d Cir. 1996) ("assertions about improper bidding, without more, lack antitrust significance"); *Car Carriers*, 745 F.2d at 1110 ("When stripped to its essential allegations, the complaint does no more than state plaintiffs' commercial disappointment at losing [Ford's] patronage.").

One final matter is worth addressing.[4] In addition to failing to state a rule-of-reason

---

[3] Neptun's attempt to render *Havoco* ineffective by limiting its applicability to cases in which there is a single losing party is unavailing. *Havoco*'s reasoning did not hinge on the fact that there was one injured plaintiff; as later courts have recognized, *Havoco* applies all the same when there are multiple unsuccessful bidders. *See, e.g.*, *Triad Isotopes*, 104 F. Supp. 3d at 925 (*Havoco* foreclosed antitrust claim alleging that "Defendants have reduced competition in the Chicago-area market by preventing legitimate low-cost *bidders* such as Plaintiff from competing equally" for a contract) (emphasis added).

[4] Because the points addressed are dispositive, the Court does not address Defendants' other arguments. *See Expert Masonry*, 440 F.3d at 345 (questions of immunities should be considered only after

11

claim, Neptun alleges an "inherently implausible" conspiracy. *Car Carriers*, 745 F.2d at 1109. It claims that Defendants agreed to circumvent competitive bidding procedures and steer business toward a less efficient, more expensive competitor. But it provides no reason whatsoever as to why Defendants would conspire to injure themselves. It does not suggest that GE Lighting was somehow involved in the conspiracy, let alone name it as a defendant. Nor does it allege an iota of upside for Defendants in driving business toward a company that would cost them more money while providing a worse product. The Court "is not required to don blinders[,] ignore commercial reality," and permit such an illogical claim to enter costly antitrust discovery. *Id.* at 1110; *see also Stamatakis Indus., Inc. v. King*, 965 F.2d 469, 471–72 (7th Cir. 1992) ("A theory of liability attributing irrationality to consumers does not get very far.").

## CONCLUSION

Neptun has failed to allege an antitrust violation. Indeed, it is "hard to ignore the suspicion that the facts [of this case] have been forced into an antitrust mold to achieve federal jurisdiction." *Car Carriers*, 745 F.2d at 1110. The Court therefore grants Defendants' motion, but will dismiss the Complaint without prejudice. Neptun has until May 7, 2018, to file an amended complaint, if it believes it can articulate a claim consistent with this Opinion and its counsel's Rule 11 obligations.

**Dated: April 16, 2018**  **ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**

---

determining whether an antitrust claim has been adequately asserted); *see also, e.g.*, *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 194 F. Supp. 3d 706, 727 n. 8 (N.D. Ill. 2016).